UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CZESAR HERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03203-JRS-DML |
| | ) | |
| RN STAFF INC, | ) | |
| MANUEL GARCIA, | ) | |
| RAMON VILLEGAS, | ) | |
| ANTONINA HASKINS, | ) | |
| ARVIN AMATORIO, | ) | |
| | ) | |
| Defendants. | ) | |

## Order on Motions for Leave to Amend and to Dismiss

On October 19, 2020, Defendant Arvin Amatorio filed a motion to dismiss Count One of the First Amended Complaint ("FAC").  (ECF No. 57.)  On February 15, 2021, the RN Staff Inc. Defendants ("RN Staff"[1]) filed a motion for summary judgment, (ECF No. 66), which is still not fully briefed.   On April 4, 2021, Plaintiff Czesar Hernandez filed a response to Amatorio's motion to dismiss.  (*See* ECF No. 85.)  The filing says little to contest dismissal.  Instead, it contains a motion for leave to amend the complaint, (ECF No. 85 at 2), and a proposed Second Amended Complaint ("SAC"), (ECF No. 85-1).  All motions other than that for summary judgment are ripe.

### I.     Motion for Leave to Amend

Compared to the FAC, the proposed SAC adds twenty-two pages, over 100 allegations, and a new cause of action against RN Staff.  Hernandez's motion for leave

---

[1] "RN Staff" refers to Defendants other than Amatorio, who is not a RN Staff employee.

1

to amend the complaint arrives long after the February 16, 2020 deadline to amend pleadings.  (*See* Scheduling Order, ECF No. 28 at 2.)  Accordingly, to determine whether leave to amend should be granted, the Court has a two-step inquiry.  *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) (describing two-step inquiry applicable when a party seeks leave to amend after the deadline in the scheduling order has passed).  First, the Court considers whether the party seeking leave to amend has demonstrated "good cause" for modifying the deadlines in the scheduling order.  Fed. R. Civ. P. 16(b)(4).  Second, if good cause for delay is shown, the Court considers whether it should give leave because "justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860–61 (7th Cir. 2001) (leave need not be granted under Rule 15 "when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile").

Hernandez has not shown good cause to excuse his untimely motion for leave to amend.  Hernandez makes several points in his filing at ECF No. 85: (1) that Amatorio would not be prejudiced by amendment because he has not engaged in discovery yet; (2) that the RN Staff Defendants would not be prejudiced because they should not be surprised by a new cause of action based on the same allegations supporting the preexisting Trafficking Victims Protect Act ("TVPA") cause of action; and (3) that decision on the motion for summary judgment would not be delayed because briefing on that motion is stayed anyway.  Even if the Court credits these arguments, they do not establish good cause—lack of prejudice and lack of undue

delay are not the same as good cause.  *See Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995) ("Moreover, while the absence of prejudice to a non-moving party may be relevant in determining whether leave to amend should be granted under Rule 15(a), it does not fulfill the 'good cause' requirement of Rule 16(b)."); *Peters v. Wal-Mart Stores E., LP*, 512 F. App'x 622, 627–28 (7th Cir. 2013) ("[T]he good-cause standard focuses on the diligence of the party seeking amendment, not the prejudice to the nonmoving party.").  "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto*, 651 F.3d at 720.  Here, Hernandez brings a new cause of action that could have been raised when he initiated this case almost two years ago.  In his filing, Hernandez admits as much when he says the allegations supporting the new TVPA claim are the same as the ones supporting his preexisting TVPA claim.  (ECF No. 85 at 3.)  Hernandez otherwise provides no reasons to excuse his late motion, let alone good reasons.  Hence, the Court is not persuaded that Hernandez has been sufficiently diligent, and he has not met his showing of good cause.

The Court need not reach the second step of the leave-to-amend inquiry.

## II.   Motion to Dismiss

Amatorio moves to dismiss the FAC insofar as it implicates him.  (ECF No. 57.) He targets Count One, which alleges that Hernandez was subjected to forced labor in violation of the TVPA.  As an initial matter, it is unclear whether Hernandez even contests the motion, as he apparently agrees to some extent that the FAC's allegations are conclusory.  (ECF No. 85 at 1.)  Ordinarily, the Court might read such

3

an ambiguous and cursory response as a forfeiture of the claim subject to the motion to dismiss. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("An unresponsive response is no response."). But given Hernandez's *pro se* status and his potential unfamiliarity with the consequences of his filings, the Court will not interpret Hernandez's failure to respond as a forfeiture and instead will engage in a full-fledged Rule 12(b)(6) analysis. *See Curtis v. Bembenek*, 48 F.3d 281, 287 (7th Cir. 1995) (A "*pro se* plaintiff who has alleged well-pled facts supporting a claim for relief can withstand dismissal without responding to a motion to dismiss.").

A complaint must contain a short and plain statement showing that the pleader is entitled to relief. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "To meet this standard, a plaintiff is not required to include 'detailed factual allegations,'" but the factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss for failure to state a claim, courts "take all the factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, and draw all reasonable inferences in the plaintiff's favor, *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Courts, however, need not accept the truth of mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. "[I]f a plaintiff pleads facts that show its suit [is] barred . . . it may plead itself out of court under a Rule

12(b)(6) analysis." *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) (citation omitted).

As relevant to Count One of the FAC, the TVPA provides the following:

Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2) by means of serious harm or threats of serious harm to that person or another person;
(3) by means of the abuse or threatened abuse of law or legal process; or
(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint

[violates this subsection.]

18 U.S.C. § 1589(a).[2]  The FAC seems to focus on the third prong, "the abuse or threated abuse of law or legal process," which is further defined as

the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

18 U.S.C. § 1589(c)(1).  Importantly, threats of causing negative immigration consequences that are used to obtain a person's continued labor can violate § 1589(a)(3).  *See Panwar v. Access Therapies, Inc.*, 975 F. Supp. 2d 948, 958 (S.D. Ind. 2013) ($20,000 early contract termination fee and threat of causing plaintiff's visa to be revoked plausibly constituted violation of § 1589(a)(3)); *Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 93 (2d Cir. 2019) (threat to expose plaintiff to deportation

---

[2] This is not only a criminal statute; the TVPA creates a civil cause of action for victims of alleged human trafficking.  *See* 18 U.S.C. § 1595(a).

5

plausibly constituted violation of § 1589(a)(3)); *Nunag–Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1144 (C.D. Cal. 2011) (plaintiffs stated TVPA claim where defendants threated to deport plaintiffs or let their visas expire if they stopped working); *United States v. Kozminski*, 487 U.S. 931, 948 (1988) ("threatening . . . an immigrant with deportation could constitute the threat of legal coercion that induces involuntary servitude").

Here, Hernandez alleges the following.  RN Staff persuaded Hernandez—then working in New York under an H-1B nonimmigrant visa—to join the company by promising sponsorship for an EB-2 immigrant visa.  (FAC ¶¶ 44, 45, ECF No. 33.)  In November 2016, RN Staff had outside immigration counsel Amatorio file a Form I-140 under the EB-2 category on Hernandez's behalf.  (*Id.* ¶ 62.)  In November 2016 and January 2017, respectively, Amatorio filed a Form I-485 adjustment application and Form I-765 work employment application on Hernandez's behalf.  (*Id.* ¶ 63.)  Based on those filings, Hernandez received from U.S. Citizenship and Immigration Services ("USCIS") an Employment Authorization Document in March 2017.  (*Id.* ¶ 65.)  But in January 2018, USCIS informed Hernandez his Form I-140 immigrant visa petition had been denied.  (*Id.* ¶ 66.)  Hernandez learned that his Form I-140 petition was denied on October 26, 2017; that his H-1B transfer petition had been denied on June 28, 2017; and that RN Staff and Amatorio had simply not disclosed this information to Hernandez in the interim.  (*Id.* ¶¶ 72, 75–77.)  RN Staff and Amatorio assured Hernandez he could continue working while they sought to resolve the visa problems by filing a motion to reopen with USCIS.  (*Id.* ¶ 69.)  Hernandez

wanted to quit and address his dubious immigration status, but he relied on RN Staff's assurances that he could stay and work. (*Id.* ¶ 86.) Amatorio sought to assuage Hernandez's concerns by re-filing his Form I-140 petition and other associated applications, but "any competent immigration lawyer would know" such re-filing was futile given the circumstances. (*Id.* ¶ 92.) By not informing Hernandez that he lacked work authorization, making knowingly frivolous and futile filings with USCIS, concealing his lack of work authorization from him, and allowing him to continue working unlawfully, RN Staff and Amatorio allegedly violated § 1589(a). (*See, e.g.*, *id.* ¶¶ 80, 99, 104, 105, 107.)

Accepted as true, these allegations plausibly show a violation of § 1589(a)(3). Amatorio's alleged acts of making knowingly futile immigration-related filings and lying to Hernandez about his work authorization, both to keep Hernandez working at RN Staff even when he wanted to leave, constitute "the use . . . of a law or legal process . . . for any purpose for which" the immigration laws were "not designed, in order to exert pressure on" Hernandez to cause him to "refrain from" quitting work. 18 U.S.C. § 1589(c)(1).

Amatorio counters that the § 1589(a) claim fails because there was no "face-to-face" coercion. But he points to no part of the TVPA requiring "face-to-face" coercion to state a claim. To the contrary, "when Congress amended the [TVPA] it expanded the definition of involuntary servitude to include nonphysical forms of coercion." *United States v. Calimlim*, 538 F.3d 706, 714 (7th Cir. 2008).

Amatorio additionally argues that dismissal is required because he used the immigration process *for* Hernandez's benefit, not *against* Hernandez.  Amatorio cites Indiana abuse-of-process cases.  *See Eckerle v. Katz & Korin, P.C.*, 94 N.E.3d 754 (Ind. Ct. App. 2017) (discussing "the requirement *that an action or process be instituted against the plaintiff* in order to sustain" a claim for abuse of process (emphasis in original)).  Even if resort to Indiana caselaw were necessary to analyze the TVPA claim, the Court doubts that Hernandez would agree that Amatorio's conduct with respect to Hernandez's immigration filings was all for Hernandez's benefit.  Indeed, Hernandez has alleged that Amatorio's use of the immigration process was for the purpose of making Hernandez work when he did not want to.  (*See, e.g.*, FAC ¶¶ 80, 92, 104, ECF No. 33.)  That does not sound like a use of the immigration process for Hernandez's benefit.  In any event, the Court does not require Indiana caselaw as persuasive authority when the statute at issue contains its own definition of "abuse or threated abuse of law or legal process."  *See* 18 U.S.C. § 1589(c)(1).  That definition, as stated above, is enough to resolve the motion to dismiss in Hernandez's favor.

### III.  Conclusion

For the reasons stated above, the motion for leave to amend, (ECF No. 85), is **denied**.  Amatorio's motion to dismiss Count One of the FAC, (ECF No. 57), is **denied**.  Additionally, Amatorio's motion to dismiss Count One of the SAC, (ECF No. 89), is **denied as moot** because it targets a complaint that was never officially filed.

Finally, a note to Amatorio: The Court on its own volition previously attempted to reach Amatorio because court mail was being returned as undeliverable, and the

Court obtained a new address that Amatorio, an attorney,[3] never thought to file with the Court.  However, mail sent to that new address continues to be returned as undeliverable.  It is a litigant's *duty* to update the Court with his or her correct mailing address.  Despite earlier confusion about who was representing Amatorio, at this point, the only person who can be faulted for providing inadequate mailing addresses is Amatorio.  For the last time, the Court will *sua sponte* update Amatorio's mailing address to that written on the envelope containing his latest filing, (*see* ECF No. 89-2).  Beyond that, the Court will not continue wasting time and expense pursuing the issue further.  The Clerk is **directed** to change Amatorio's address on the docket to the address listed in the distribution section below.

    **SO ORDERED**.

Date: 5/20/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

---

[3] As an attorney, Amatorio is also able to avoid mailing address issues entirely by applying for admission *pro hac vice* in order to take advantage of the Court's CM/ECF filing system. He has not done so.

9

Distribution:

CZESAR HERNANDEZ
182 Battery Avenue
Brooklyn, NY 11209

ARVIN AMATORIO
31 West 34th Street
Floor 8
New York, NY 10001

Bryce H. Bennett, Jr.
RILEY BENNETT EGLOFF LLP
bbennett@rbelaw.com

G. John Cento
CENTO LAW
cento@centolaw.com

Patrick Stephen McCarney
RILEY BENNETT EGLOFF LLP
pmccarney@rbelaw.com

STEVEN W. WILLIAMS
Smith, Sovik, Kendrick & Sugnet, P.C. - Syracuse Office
250 South Clinton Street, Suite 600
Syracuse, NY 13202-1252