UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CZESAR HERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03203-JRS-DML |
| | ) | |
| RN STAFF INC, | ) | |
| MANUEL GARCIA, | ) | |
| RAMON VILLEGAS, | ) | |
| ANTONINA HASKINS, | ) | |
| ARVIN AMATORIO, | ) | |
| | ) | |
| Defendants. | ) | |

**Order on Motion for Dismissal and Other Sanctions**

Plaintiff Czesar Hernandez is a Philippines citizen who came to the U.S. to work as a physical therapist.  He alleges that Defendants (his former employer and its agents) obtained his labor and services by threatening financial harm, revocation of his H-1B visa,[1] and deportation, and by abuse of legal process in violation of the Trafficking Victims Protection Act of 2003 ("TVPA"), 18 U.S.C. § 1589(a).  He also alleges that they willfully filed fraudulent information returns in violation of 26 U.S.C. § 7434.  Since early to middle 2021, Mr. Hernandez has been the source of discovery problems, as discussed in the Magistrate Judge's Order on Defendants' Motion to Compel, Defendants' Response in Opposition to Motion to be Served by Email, and the Motion for Dismissal and Other Sanctions ("Motion for Dismissal")

---

[1] The H-1B visa is a nonimmigrant work visa that allows employers to hire highly educated foreign professionals to work in specialized positions that require at least a bachelor's degree or the equivalent.

and supporting memorandum.  (*See* ECF Nos. 128, 131, 136, & 137.)  These problems have undermined the case schedule, required RN Staff to undertake significant and undue effort and expense to obtain immigration records from United States Citizenship and Immigration Services ("USCIS"), resulted in USCIS's participation in this action, and caused the Court to expend significant resources to address these problems.

Defendants RN Staff, Inc., Manuel Garcia, Ramon Villegas, and Antonina Haskins ("RN Staff Defendants") have moved for dismissal with prejudice and other sanctions under Federal Rules of Civil Procedure 16(f), 37(b)(2)(A), 37(c)(1), and 41(b), and the Court's inherent authority, and for costs, including attorney's fees.  (ECF No. 136.)  Defendant Arvin Amatorio has joined in their motion.  (ECF No. 141.) Defendants argue that Mr. Hernandez has, *inter alia*, wasted judicial resources; needlessly escalated litigation costs; repeatedly omitted or misrepresented material facts—both in substantive filings and directly to Magistrate Judge Lynch during court conferences; concealed relevant and material evidence—his T-visa[2] and other immigration-related filings—for more than a year and tendered a false interrogatory response in doing so; and contumaciously challenged the Magistrate Judge's Order on Defendants' Motion to Compel by refusing to comply with its terms and by filing a frivolous motion for reconsideration.  The Motion for Dismissal is supported by

---

[2] USCIS may issue T-visas to certain foreign nationals who are victims "of a severe form of human trafficking," which includes "obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery."  22 U.S.C. § 7102(11); *see also* 8 U.S.C. § 1101(a)(15)(T)(i); 8 C.F.R. § 214.11(d).

several Declarations of Patrick S. McCarney, counsel for RN Staff Defendants, and attached exhibits.  (ECF Nos. 136-1, 150-1.)

Mr. Hernandez opposed the motion by filing Plaintiff's Declaration in Opposition to Defendants' Joint Motion for Dismissal and Other Sanctions with two attached exhibits.  (ECF No. 146.)

Upon reviewing the Declarations; the transcripts of the July 9, 2021, August 27, 2021, and November 8, 2021, conferences before the Magistrate Judge, (ECF Nos. 110, 152, 144); the exhibits; and the record as a whole, the Court determined that an evidentiary hearing was required.  (ECF No. 153.)  The Court also ordered Mr. Hernandez to sign an authorization form for release of his immigration file and to submit it to counsel for USCIS, for production of the file to him and for production under seal to the Court.  (*Id.*)  And Mr. Hernandez was ordered to produce a copy of all documents in his immigration file, except his application for a T-visa or Form I-914 and accompanying materials, to counsel for Defendants.

On May 11, 2022, the Court held the evidentiary hearing at which Mr. Hernandez appeared and testified under oath, Mr. Carney appeared and argued on behalf of RN Staff Defendants, and Mr. Amatorio appeared and argued on his own behalf.  The hearing spanned several hours.  Mr. Hernandez, both during oral proceedings and in his written filings and communications, evidences a command of the written and spoken English language and has proceeded throughout the hearings and conferences without the aid of an interpreter.  Having given the Motion for Dismissal due consideration in light of the record as a whole, the Court decides as follows.

## I. Legal Standards

Under Rule 16(f), the Court may issue sanctions, "including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party . . . does not participate in good faith" in a pretrial conference or "fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(B)–(C).  "Instead of or in addition to any other sanction, the court must order the party . . . to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 16(f)(2).  Rule 16(f) does not require a finding of bad faith, willfulness, or contumaciousness; mere negligence will suffice to warrant sanctions.  *Brehmer v. Rolls Royce Corp.*, No. 1:19-cv-02470-JPH-TAB, 2019 WL 6715387, at *2 (S.D. Ind. Dec. 10, 2019).

Under Rule 37, the Court may impose a range of sanctions, up to dismissal of the action, against a party who fails to comply with a discovery order such as an order compelling discovery.  *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775, 781–82 (7th Cir. 2016) (affirming dismissal of action with prejudice as discovery sanction for witness tampering); *see also Govas v. Chalmers*, 965 F.2d 298, 303 (7th Cir. 1992) ("a district court has the discretion to dismiss a claim when a party demonstrates a pattern of dilatory and evasive discovery tactics and when that party willfully persists in such tactics in violation of court warnings and orders").  An evasive or incomplete discovery response is treated as a failure to disclose, answer, or respond.  *Ramirez*, 845 F.3d at 776; *see also* Fed. R. Civ. P. 37(a)(4).  A Rule 37 dismissal

requires a showing of willfulness, bad faith, or fault. *Ramirez*, 845 F.3d at 776. In this context, fault "does not require a showing of intent, but presumes that the sanctioned party was guilty of 'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" *Id.* (quoting *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992)); *see also Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) (explaining that in this context "fault" means "objectively unreasonable behavior"). Rule 37 also provides that the court "must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Rule 26(e) imposes a duty on a party to supplement or correct its response to a discovery request "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1). If a party fails to comply with Rule 26(e), "the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition, the court may order the party to pay the reasonable expenses, including fees, caused by the failure and may impose other appropriate sanctions, including those in Rule 37(b)(2)(A). Fed. R. Civ. P. 37(c)(1)(A).

Rule 41(b) authorizes the dismissal of an action with prejudice if a plaintiff fails to comply with the Federal Rules or a court order. Fed. R. Civ. P. 41(b). With a few exceptions, a Rule 41(b) dismissal is an adjudication on the merits. *Id.* Dismissal under Rule 41(b) is appropriate "only when there is a clear record of delay or

contumacious conduct, or when other less drastic sanctions have proven unavailing."
*Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 699 (7th Cir. 2014) (quotation omitted).
The sanction of dismissal is key to a district court's "ability to manage efficiently [its]
heavy caseload[] and thus protect the interests of all litigants."  *Id.* (quotation
omitted).  Courts should consider the following when evaluating a Rule 41(b) motion:

> [1] the frequency and magnitude of the plaintiff's failure to comply with
> deadlines for the prosecution of the suit, [2] the apportionment of
> responsibility for those failures between the plaintiff and his counsel, [3]
> the effect of those failures on the judge's calendar and time, [4] the
> prejudice if any to the defendant caused by the plaintiff's dilatory
> conduct, [5] the probable merits of the suit, and [6] the consequences of
> dismissal for the social objectives of the type of litigation that the suit
> represents.

*McMahan v. Deutsche Bank AG*, 892 F.3d 926, 931–32 (7th Cir. 2018).   A
determination whether to dismiss "depends on all the circumstances of the case."  *Id.*
at 932 (quotation omitted).

Lastly, under its inherent authority, a court may "sanction those who show
'willful disobedience of a court order,' act in 'bad faith, vexatiously, wantonly, or for
oppressive reasons,' for fraud on the court, delay, disruption, or 'hampering
enforcement of a court's order.'"  *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir.
2018) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).  While generally
"[a] court's inherent authority is broad," it is even more so "where the bad faith
conduct occurs within the presence of the court . . . and where the court uses the
sanction to maintain 'the integrity of the trial process.'"  *Id.* (quoting *Int'l Union,
United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 832 (1994)).  As the Seventh
Circuit has said, "falsifying evidence to secure a court victory undermines the most

6

basic foundations of our judicial system." *Secrease v. Western & S. Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015).  Even if the falsification is detected, "the effort imposes unjust burdens on the opposing party, the judiciary, and honest litigants who count on the courts to decide their cases promptly and fairly." *Id.*  "[C]ourts generally have an interest in both punishing a party's dishonesty and deterring others who might consider similar misconduct." *Id.*  And "it goes without saying and hardly needs citation that a court need not warn a plaintiff . . . that it may not lie to a court." *Fuery*, 900 F.3d at 466 (citing *Ayoubi v. Dart*, 640 F. App'x 524, 529 (7th Cir. 2016) ("no one needs to be warned not to lie to the judiciary") (citation omitted)).

## II. Findings of Fact

Mr. Hernandez commenced this action in January 2019 upon filing his Complaint against RN Staff and Manuel Garcia.  He filed an Amended Complaint adding Antonina Haskins, Ramon Villegas, and Arvin Amatorio as Defendants.  In September 2019 following the Initial Pretrial Conference, the Magistrate Judge entered a Rule 16(b) scheduling order setting pretrial deadlines.  (Order, ECF No. 28.)  Under that Order, each party was required to give the other parties "copies of all documents . . . that the party has that it may use to prove its case" and had a duty to update the information and documents provided as additional information becomes available.  (Order, ¶¶ A, D, ECF No. 28.)  The deadline for serving discovery requests was set and later extended to June 29, 2020.  (*See* ECF No. 38.)

RN Staff Defendants served their First Set of Interrogatories and First Request for Production on Mr. Hernandez on March 4, 2020, which consisted of eight

interrogatories and eight requests for production.  (ECF No. 123-5 at 1; ECF No. 123-6 at 1–5.)  By May 18, 2020, Mr. Hernandez had not responded, and RN Staff's counsel at the time requested responses by June 8, 2020.[3]  (ECF No. 123-5 at 2–3.)  Mr. Hernandez then requested additional time until June 19, 2020, and later indicated his responses would be mailed on June 23, 2020.  (*Id.* at 2, 4.)

On June 23, 2020, more than 80 days after his responses had been due, Mr. Hernandez provided his responses to the discovery requests.  (*See* ECF No. 123-5 at 5–9.)  Interrogatory No. 8 asked him to:

> Identify all communications between you and any other person or entity, including, but not limited to any and all of the Defendants relating or referring to the facts, acts, events or matters alleged in your Amended Complaint or to your employment with RN Staff that is the subject of your Amended Complaint. Your response should describe the date, means and substance of each communication identified.

(ECF No. 123-6 at 5.)  Mr. Hernandez's sworn answer: "None." (*Id.* at 16–17.)  He did not assert any objections to the interrogatory.  As part of the requests for production, Mr. Hernandez was to produce, *inter alia*, documents identified in his interrogatory answers, emails with others concerning the claims asserted in this lawsuit, and documents supporting the factual allegations of his Complaint.  (*Id.* at 1–2.)  He did not respond with formal responses or objections.  (*Id.* at 6–9.)

As part of his discovery requests, Mr. Hernandez sought immigration filings from RN Staff.  On November 2, 2020, in response to Mr. Hernandez's second motion to compel, RN Staff advised him that it had already produced the immigration documents believed to be in its possession.  (*See, e.g.*, ECF No. 60 at 12.)  RN Staff

also advised Mr. Hernandez that those documents were readily available to him upon his request to USCIS.  (*See, e.g., id.*)

Mr. Hernandez's Third Motion to Compel, dated March 3, 2021, sought to require RN Staff to obtain immigration records from Mr. Amatorio.  (ECF No. 71 at 3–6.)  RN Staff responded on April 7, 2021, that Mr. Hernandez should seek the documents directly from Mr. Amatorio, who is also a party.  (ECF No. 80 at 9–10.)  RN Staff again advised Mr. Hernandez that his immigration filings likely were "readily accessible to [him] from USCIS" but were not accessible to RN Staff.  (*Id.* at 9.)  Mr. Hernandez replied on April 23, 2021, that this was "simply a BIG LIE" and that only RN Staff and its immigration lawyer could make a request with USCIS for copies of those records.  (ECF No. 86 at 2.)

On May 28, 2021, the Magistrate Judge granted in part and denied in part Mr. Hernandez's Third Motion to Compel.  She ordered RN Staff to obtain and produce all immigration-related documents from Mr. Amatorio and seek copies of immigration documents that were filed or received by RN Staff or its agents from the federal government.  (Order on Pl.'s Third Mot. to Compel, 4, ECF No. 94.)  The Magistrate Judge said she did not know whether Mr. Hernandez's representations about his ability to obtain documents from USCIS were true, but encouraged him to try.

After RN Staff obtained written consent from Mr. Hernandez, it served a subpoena on USCIS, requesting a response by July 12, 2021.  (ECF No. 123-7 at 31; ECF No. 106-1.)  On June 11, 2021, in compliance with the Magistrate Judge's Order, RN Staff sent Mr. Hernandez an email with a link to an electronic folder through which he

could access and download a pdf file comprised of 385 pages of immigration documents that had been received from Mr. Amatorio. (ECF No. 123-7 at 32–33; McCarney Decl. ¶ 4, ECF No. 150-1.)

The Magistrate Judge held a status conference on July 9, 2021, to discuss compliance with the May 28 Order. At the conference, Mr. Hernandez said that he "believe[d]" he had not received the immigration documents RN Staff sent him, which had been produced weeks before. (July 8, 2021 Conf. Tr. 10–11, ECF No. 110.)[4] However, this was the first time that he gave any indication that he had not received the documents—despite the fact that RN Staff's counsel had sent him two emails producing the documents; and on June 16, 2021, had filed a Notice of Compliance with the May 28 Order, which was served on Mr. Hernandez by email. Still, during the conference, RN Staff's counsel resent the 385 pages of immigration-related documents to Mr. Hernandez—using the very same method used in June 2021—and Mr. Hernandez received them without issue. (ECF No. 123-7 at 35–37.) The documents included, among others, Mr. Hernandez's I-129 transfer petition, I-140 petitions, and I-485 applications. (McCarney Decl. ¶ 6, ECF No. 150-1.) Mr. Hernandez confirmed receipt of the documents on July 12, 2021. (ECF No. 123-7 at 37.) Although he had made a FOIA request to USCIS for his immigration documents only one month before, Mr. Hernandez made no mention of his request during the conference.

---

[4] At the evidentiary hearing, Mr. Hernandez testified that he never found the June 11 email production of documents in his spam mailbox. Mr. McCarney represented that the email was not returned to him as undeliverable.

Mr. Hernandez sought leave to reopen discovery and serve written discovery on Mr. Amatorio despite acknowledging that he had not yet served any formal discovery requests on Mr. Amatorio.  (July Conf. Tr. 10, ECF No. 110.)  Mr. Hernandez also expressed a desire to take Mr. Amatorio's deposition.  (*Id.* at 16.)  Discovery had been closed for over one year, but the Magistrate Judge allowed Mr. Hernandez to serve discovery requests on Mr. Amatorio by the end of July 2021 without reopening discovery.  (*Id.* at 14–17.)  Mr. Hernandez never served additional discovery requests, however.

An August 27, 2021, conference was scheduled to discuss the USCIS Subpoena, the scheduling of Mr. Amatorio's deposition, and the completion of discovery.  (Aug. 27, 2021 Conf. Tr. 3, ECF No. 152.)  RN Staff counsel twice tried to confer with Mr. Hernandez in advance of the conference, but he failed to respond until the day before the conference, and then only to say he could not confer in advance.  (*Id.* at 6, 12; *see also* ECF No. 123-7 at 38–40.)  During the conference, Mr. Hernandez represented that he was still waiting for the USCIS immigration documents and stated that he had not received any communication from USCIS.  (Aug. 27, 2021 Conf. Tr. 4–5, 7, ECF No. 152.)  He also said he wanted to wait for the USCIS documents before taking Mr. Amatorio's deposition.  (*Id.* at 6–7.)  After discussion about filing a FOIA request with USCIS for the immigration documents, Magistrate Judge Lynch asked Mr. Hernandez if he had tried a FOIA request, and Mr. Hernandez said he was "really surprised to know that" he could do so.  (*Id.* at 7–8.)  In his Declaration filed in opposition of the Motion for Dismissal, Mr. Hernandez says, under penalty of perjury,

that "[r]egarding the FOIA documents, I either did not fully comprehend or understand or had a lapse in memory during a court status conference when the same was asked.  It was not my intention to misrepresent to the Court." (Hernandez Decl. ¶ 30, ECF No. 146.)

During the August 2021 conference, the Magistrate Judge said to Mr. Hernandez, "So it sounds as though you're just still waiting for USCIS.  Have you received any communication from that agency?"  (Aug. 27, 2021, Tr. at 5, ECF No. 152.)  He answered, "No, I have not, Your Honor." (*Id.*)  However, by that time, Mr. Hernandez had received several communications from USCIS, including the June 14 letter acknowledging receipt of his FOIA request and the June 28 letter providing the immigration documents sought.  His position is that he was not aware of these communications.  But these letters were addressed to Mr. Hernandez's U.S. mailing address at 182 Battery Ave, Brooklyn, NY, and presumably were sent by U.S. mail, and Mr. Hernandez has made no claim of problems receiving regular mail.  And even if Mr. Hernandez was unaware of these communications from USCIS, he had received at least one other communication from USCIS—his T-visa in May 2020—and he presumably had received other communications in connection with his T-visa application.

Also during the same conference, Mr. Hernandez asked to serve new discovery requests on Mr. Amatorio.  When asked if he had done so by the end of July as directed, Mr. Hernandez said, "I don't remember—I don't think so." (*Id.* at 10.)  He

sought two more weeks to serve discovery and was granted leave to do so within seven days. (*Id.* at 11.) He never served any discovery requests on Mr. Amatorio.

On September 23, 2021, the Magistrate Judge ordered USCIS to produce the subpoenaed documents. (Order Compelling Compliance with Subpoena, ECF No. 113 at 2.) That prompted USCIS to have counsel enter an appearance on its behalf as an interested party and seek an extension of time to comply with the subpoena. On October 19, 2021, AUSA Shelese Woods sent Mr. Hernandez a letter indicating that due to the sensitive nature of the documents USCIS was required to produce, he had to sign an enclosed consent form before USCIS would disclose his file documents to a third party. (ECF No. 123-8.)

On October 21, 2021, AUSA Woods disclosed to RN Staff counsel that Mr. Hernandez had, in fact, filed a FOIA request for certain immigration records on June 8, 2021, including those related to the I-129 and I-140 petitions filed by RN Staff, pursuant to which he received 137 pages of documents on or around June 28, 2021. (ECF No. 134-1 at 1; ECF No. 134-3 at 1–2.) As noted, Mr. Hernandez had claimed that only RN Staff could request the documents. (Pl.'s Reply to Defs.' Resp. to Pl.'s Third Mot. Compel, 2 (referring to "BIG LIE" that immigration filings are readily accessible to him, and arguing RN Staff should request the records), ECF No. 86.) Based on AUSA Woods's representation about Mr. Hernandez's FOIA request and the USCIS response, RN Staff counsel sent Mr. Hernandez a letter on October 19, 2021, requesting supplementation of his responses to Interrogatory 8 and Requests for Production 1, 2, 6, and 7. (ECF No. 123-9.) In light of the new information

provided by USCIS, Mr. Hernandez's discovery answer and responses were incomplete and evasive. However, he never responded to the letter or a follow-up email. *(Id.* at 5.)

On November 8, 2021, the Magistrate Judge held a conference to address USCIS's filing and inquire into the Order compelling USCIS's compliance with the subpoena, during which Mr. Hernandez asserted that any T-visa communications were attorney-client privileged. Yet he offered no facts or legal argument to support this position. (Nov. 8, 2021 Conf. Tr. 3, ECF No. 144.) And on September 28, 2021, he had responded to a written discovery request stating that the attorney-client privilege would not extend to any application once filed with USCIS. (*See* ECF No. 56-1 at 11 ("[O]nce the documents have been shared with a third party, such as with the Immigration Service, these documents are no longer covered by the attorney client privilege.").) Thus, the assertion of the attorney-client privilege at the November conference was unreasonable. Nonetheless, Mr. Hernandez would not admit or deny whether he had applied for a T-visa. (Nov. 8, 2021 Conf. Tr. at 9–10, ECF No. 144.) And he refused to sign the Consent Form and refused to allow even ex parte, in camera production of his immigration files so the Magistrate Judge could address the privilege and relevance issues.

This prompted RN Staff's counsel to express concern that Mr. Hernandez was not participating in the conferences in good faith. (*Id.* at 19.) In response, Mr. Hernandez said he was waiting for a response from USCIS. He stated that he did not know that he had received the documents from USCIS—offering that emails wound up in his

spam email folder.  (*Id.* at 19–20.)  Yet, a FOIA requester can check on a FOIA request online, and Mr. Hernandez would have known that fact since around August 27, 2021, when RN Staff counsel emailed him FOIA instructions, indicating that a status check on a records request could be done online.  (ECF No. 123-7 at 41; *see also* USCIS June 14, 2021, letter to Mr. Hernandez re: his June 8, 2021, FOIA request, ECF No. 150-3 at 3.)  Besides, Mr. Hernandez offered no explanation for why he failed to disclose his FOIA request during the August conference.  As a result of the conference, the Magistrate Judge vacated the order compelling USCIS's compliance with subpoena and authorized the filing of a motion to compel Mr. Hernandez to produce documents related to his T-visa application and other documents previously requested.  (Entry from Discovery Conf., ECF No. 120.)

RN Staff filed its Motion to Compel Plaintiff's Discovery Responses on November 22, 2021, seeking supplementation of Mr. Hernandez's responses to its First Set of Interrogatories and First Request for Production as well as authorization permitting the disclosure by USCIS of his immigration records, including documents related to his T-visa application.  (*See* ECF No. 122.)  Mr. Hernandez failed to respond to that motion.  A few months later,[5] the Magistrate Judge issued her Order on Defendants' Motion to Compel, finding that the T-visa documents are relevant and of significant probative value to this case.  After considering Mr. Hernandez's interests in preventing disclosure—he identified none—and the public interest, the Magistrate Judge fashioned a protective order whereby Mr. Hernandez would obtain the

---

[5] The Order was signed on January 27, 2022, and docketed on January 28, 2022.

immigration documents needed to prosecute his claims and Defendants would obtain information about his T-visa application, yet prevent disclosure of the T-visa documents themselves.  (Order on Defs.' Mot. to Compel, 12–17, ECF No. 128.)  She ordered Mr. Hernandez by February 7, 2022, *inter alia*, to sign the Consent Form provided by USCIS for release of his immigration file and submit it to USCIS counsel for production to him.  (*Id.* at 16.)  Mr. Hernandez was served with a copy of the Order on or about January 31, 2022.  (*See* ECF No. 133-1.)  He failed to comply with the Order.

Instead, on February 7, 2022, at 5:35 p.m., Mr. Hernandez emailed RN Staff's counsel and Mr. Amatorio to advise that for the last two weeks he had been on a temporary work assignment away from home and to request that they send communications by email at the time.  (ECF No. 131-1 at 2–3.)  Mr. Hernandez also said that he had been home the weekend before, on February 5 and 6, and "saw no letters from the Court."  (*Id.* at 3.)  His email closed with: "I almost forgot, but just in case you know of any court communication that may be urgent during this time . . . please advise me as well by email . . . because like I said, the earliest I can read any communication sent by postal mail will be on the weekends."  (*Id.*)  RN Staff counsel responded by email at 6:22 p.m., informing Mr. Hernandez that the "Court issued an order on January 28, 2022, granting, in part, RN Staff's Motion to Compel" and asking for clarification that Mr. Hernandez "ha[s] not seen this Order?"  (*Id.* at 2.)  At 7:00 p.m., Mr. Hernandez replied by email: "I have not seen the Order."  (*Id.*)  At 7:17 p.m., RN Staff's counsel emailed Mr. Hernandez a copy of the Order.  (ECF No. 131-1 at 1.)

At 11:14 p.m. that night, Mr. Hernandez emailed a filing to the Court, informing of his temporary contact information change and requesting service by email. (*See* ECF No. 130.) He states that he "ha[s] not seen the alleged Order" and requests that a copy be sent to him via email and that correspondence be emailed to him for several weeks. (*Id.* at 1.) The filing contains an electronic signature: "/s/ CZESAR HERNANDEZ (02/07/2022)." (*Id.*) Mr. Hernandez acknowledges that defense counsel advised him of the Order: the filing says that counsel advised him of a "Court order *granting in part and denying in part* [RN Staff's] motion to compel." (*Id.* (emphasis added).) Counsel's email, however, merely referred to the Order "granting, in part, RN Staff's Motion to Compel." (*Compare* ECF No. 130, *with* Mr. McCarney's 2/7/2022 6:22 p.m. email to Mr. Hernandez, (ECF No. 131-1 at 2), and Order on Motion to Compel, 16, ECF No. 128.) This suggests that Mr. Hernandez had read or at least seen the Order, even though he claims in his filing that he "ha[d] not seen the alleged Order." (ECF No. 130.)

On February 14, 2022, Mr. Hernandez filed a letter addressing the Order, which is, in effect, a motion for reconsideration. He says: "I first got a copy of the Court's January 27 [sic], 2022, Order when Defendants' lawyer [Mr. McCarney] . . . sent me an email on February 7 . . . at around 7:17 at night." (ECF No. 133 at 1.) Despite acknowledging that he had read the January 28 Order, the February 14 filing does not request any relief, but says only that Mr. Hernandez "would have sent this letter much earlier, but I could not, because" he lacked "readily available access to the required technology . . . while I was assigned in northwestern New York." (*Id.* at 2.)

Mr. Hernandez also quibbles with the language of the Consent Form. (*Id.* ("If I signed the CONSENT TO DISCLOSE FORM as presently drafted, then I would be indirectly violating the Court's order.").) Inexplicably, he references immigration records that he has "been requesting to be produced," including his I-140 petition, I-765 application, and I-485 applications, which are the same documents that were twice produced by RN Staff and many of which were included in his FOIA request. (*Id.*) The letter contains a "wet signature" of Mr. Hernandez. (*Id.*)

In response to the Motion for Dismissal Mr. Hernandez first offers his April 1, 2022, Declaration, under penalty of perjury, stating that he did not have ready access to court filings and relied on postal mail delivery, and with respect to communications from Defendants, also on email. (Hernandez Decl. ¶ 3 ("Being a pro se litigant, I did not and do not have ready and instant access to court filings"), ECF No. 146.) This, he says, prompted him to email defense counsel on February 7, 2022, at 5:35 p.m., informing them of his temporary work assignment and requesting that they communicate with him "only through email messages," which was how they had already been communicating with him throughout the case, and requesting that if they knew of "any court communication that may be urgent," they "please advise me as well by email." (*Id.*) Mr. Hernandez admits that Mr. McCarney informed him that the Court had issued an Order on January 28 granting, in part, RN Staff's Motion to Compel. (*Id.* ¶ 5.)

Mr. Hernandez then tells how he drove around Ithaca, New York, for about three hours on February 7 looking for friends with technological equipment to print out,

sign, and scan a letter to the Court, culminating in him emailing a letter to the Court about 11 p.m. for filing.  (Hernandez Decl. ¶¶ 7–9, ECF No. 146.)  In that letter Mr. Hernandez states: "I have not seen the alleged Order."  (*Id.* ¶ 9, ECF No. 146.)  He repeats this claim more than once in his Declaration.  (*Id.* ¶ 10 ("As of the time I emailed the Court past 11 PM, I had not *really* seen yet the Court's January 28, 2022, Order." (emphasis added)), ¶ 11 (saying he concentrated on sending "a message to the Court about [his] situation" and denying that he had misrepresented not seeing the Order).)  He claims he only discovered the next morning that Mr. McCarney had sent him an email around 7:17 p.m. with a copy of the Order.  (*Id.* ¶ 10.)  He did not mention any problem with his email that evening or explain why he did not open the attachment of an email received a mere 17 minutes after his last exchange with counsel and 4 hours before his email to the Court.

Mr. Hernandez has a pattern of claiming that he did not receive a document from the Court or counsel when it suits him.  (*See*, e.g.*,* ECF No. 137 at 15–16 (identifying examples, including ECF No. 123-5 at 3 (claiming never to have received answer), ECF No. 137-2, 1–3 (stating that on Sept. 4, 2019, at 11:11 p.m. he just found defense counsel's Aug. 26, 2019, email regarding Rule 26 meet and confer in spam), ECF No. 137-2 at 6 (claiming defense counsel's emails "got into the junk mails"); McCarney Decl. ¶¶ 10–11 (Mr. Hernandez said he did not receive counsel's March 16, 2022 email requesting a conference to confer in good faith to attempt to resolve issues before the filing of the Motion for Dismissal), ECF No. 136-1.))  He also has a habit of making to the Court and attempting to explain away inconsistent representations and actions.

For example, Mr. Hernandez tried to justify his bizarre conduct on February 7 by claiming that he had to have a "wet" signature on his letter to the Court, which is discussed below.

As Mr. Hernandez knows, he has an obligation to keep updated his contact information on file with the Court. (*See, e.g.,* ECF No. 29 (Sept. 27, 2019, Notice of Change of Address for Mr. Hernandez).) And he can check PACER for case filings. He also has a duty to remain advised of the status of his case.

The Court held an Evidentiary Hearing on Defendants' Motion for Dismissal, at which Mr. Hernandez appeared and testified under oath.[6] Mr. Hernandez eloquently and at times emotionally testified that he applied for a T-visa in May 2019, and the T-visa was approved in May 2020. He testified that he had conferred with a nongovernmental organization in New York about his case and T-visa application but offered the explanation that he thought that anything relating to the T-visa was supposed to be confidential. He acknowledged, however, that the allegations in his civil complaint in this case are, for the most part, the same as the content of his T-visa filings.

Mr. Hernandez stated that he had filed a FOIA request for immigration documents on June 8, 2021. While he agreed that USCIS's June 28, 2021 letter to him indicates that USCIS sent the documents he requested to him, he claimed that he was unaware of that communication, which was sent in an email that he had not

---

[6] RN Staff's counsel advised the Court that Mr. Hernandez had seemingly attempted to comply in good faith with the late April 2022 orders requiring him to sign the consent form and answer interrogatories. Nonetheless, RN Staff had required two requests for supplementation of his discovery responses and still believed there were some deficiencies.

seen.  He claimed that when the fact USCIS had sent him the documents was brought to his attention, he checked the junk mail in his email and downloaded the documents.  He also said he was unaware of USCIS's June 11, 2021 confirmation and claimed he "forgot" about his FOIA request because there was a lot going on, which he explained, meant this case.  Mr. Hernandez stated that he had a few important items go into spam or junk mail, and not just from defense counsel.  The Court questioned him why, when he knew important documents went to his spam folder and he had this case pending, he would not check his spam folder more frequently. Mr. Hernandez's response was that he should have checked his spam folder more often.

The Court asked Mr. Hernandez why he had represented that he had no communications with anyone about his case, when he had.  He explained that he believed the T-visa and anything that pertains to his T-visa application should be confidential for fear of retaliation.  He was questioned why this was a concern since he had already leveled his complaints against the Defendants in full and on the record in this case.  He did not have an adequate response.  Mr. Hernandez was questioned why he had said he was "surprised" to hear that he could file a FOIA request with USCIS when the Magistrate Judge asked him about that at the August 2021 conference.  He claimed that he said that because he didn't know whether he would get the documents.

Mr. Hernandez was asked to explain his statement that "regarding his FOIA documents, [he] either did not fully comprehend or understand or had a lapse in

memory during a status conference when the same was asked." (*See* Hernandez Decl. ¶ 30, ECF No. 146.)  He offered that he was not sure if he could request the immigration documents RN Staff had filed on his behalf.  When asked to clarify, he explained that he was not sure he could get the documents, and that was why he said he was surprised to know that he could file a FOIA request.  When the Court asked what he meant by "or had a lapse in memory," Mr. Hernandez testified that he had forgotten he had a FOIA request pending.  That is unbelievable.

The questioning turned to Mr. Hernandez's actions on February 7, 2022.  When initially asked what prompted him to suddenly email defense counsel to advise that he was on a temporary work assignment and had been home the weekend before but did not see any letters from the Court or counsel, and to ask if counsel knew of any urgent court communication to advise him by email on the same date that his compliance with the Order on Defendants' Motion to Compel was due, Mr. Hernandez could not provide an answer.  He offered only that it was not his intent to mislead or misrepresent.  Later in the hearing, when the Court said that Mr. Hernandez's February 7 email to Mr. McCarney seemed suspicious, Mr. Hernandez offered that his email was triggered by an email communication with Mr. McCarney.  This prompted the Court to ask whether Mr. Hernandez's email was the first email in the email chain; Mr. Hernandez said he could not recall.  The email chain reflects that Mr. Hernandez's email was the first in the chain.  (*See* Defs.' Resp. to Pl.'s Mot. to be Served via Email, Ex. 1, ECF No. 131-1.)  Nor could Mr. Hernandez explain why he

requested that counsel not send him anything by postal mail when all of counsels' communications had been by email.

Mr. Hernandez offered that he did not see Mr. McCarney's 7:17 email because he was focused on accessing a computer to write a letter to the Court. According to his testimony, he could not write the letter on his phone because the document needed to be printed out and signed with a pen; i.e., contain a "wet" signature. The Court asked Mr. Hernandez if he could have used an electronic signature, and he said he has never done that. The letter Mr. Hernandez actually filed with the Court, (*see* ECF No. 130), had an electronic, typed signature as opposed to a wet signature. As RN Staff asserts, "the timing and content of [Mr. Hernandez's] email correspondence and [February 7 letter filing] are suspect given the subject matter of the Order and [his] discovery posture related thereto." (Defs.' Resp. to Pl.'s Mot. to be Served via Email ¶ 11, ECF No. 131.)

When the Court asked about PACER, Mr. Hernandez initially claimed not to know what PACER is. But when confronted with his email to Mr. McCarney in March 2021 advising, "I do not have access to PACER, unless I pay," (*see* ECF No. 134-2), Mr. Hernandez then said that it was his understanding that PACER was for attorneys only. Subsequently, he said he wanted to correct himself if he ever said on the record that he didn't know what PACER was. He stated that the nongovernmental entity with which he had been consulting about his case had informed him "to an extent" about PACER and his understanding was that it was accessed by attorneys. Mr. Hernandez proceeded to explain that in saying that he did not have access to PACER

unless he paid, what he actually meant was that to have access to PACER, he would have to speak with an attorney and then have to pay the attorney for the cost of accessing PACER.  Yet, he had stated that the attorneys at the nongovernmental entity did not charge him any fees.

Mr. Hernandez is highly educated and at the evidentiary hearing showed himself to be very articulate.  The Court finds that during the hearing, however, he was trying to explain away the inconsistencies in his statements in his Declaration, his email correspondence with defense counsel, and in his statements during conferences with the Magistrate Judge and testimony at the hearing.  These inconsistencies have an adverse effect on Mr. Hernandez's credibility.

## III.    Conclusions of Law

Having carefully considered the record, the Court concludes that the sanction of dismissal is appropriate in the exercise of the Court's inherent authority.  Even if the Court puts aside the question of whether Mr. Hernandez generally participated in the July and August pretrial conferences in good faith—and there is certainly serious reason to doubt that he did—and the fact that his answers to interrogatories, including Interrogatory No. 8 and responses to Requests for Production were incomplete, evasive, misleading, or demonstrably false; that he has failed to timely and properly supplement his discovery responses; that he failed to obey the Magistrate Judge's initial Rule 16 scheduling order, (Order, ECF No. 28); and the fact that he contumaciously disobeyed the Order on Defendants' Motion to Compel;[7] the

---

[7] For example, by the time Mr. Hernandez answered the First Set of Interrogatories in June 2020, he had communicated with at least USCIS and the nongovernmental organization in

fact remains that he has lied both in court filings and in oral statements to the Magistrate Judge and in his testimony under oath before the Court at the evidentiary hearing—a hearing set to inform the Court's determination as to whether sanctions were appropriate.

As an example, during the August 2021 conference, after RN Staff counsel said that Mr. Hernandez could submit a FOIA request to USCIS for his immigration records, the Magistrate Judge asked Mr. Hernandez if he had "tried that?"  Mr. Hernandez answered that he was "really surprised to know that" and it was his "understanding that [he] cannot" do so.  (Aug. 27, 2021 Conf. Tr., Tr. 7–8, ECF No. 152.)  But just two months before, he had made a FOIA request to USCIS.  Mr. Hernandez later tried to explain his answer away in his Declaration, stating that he "either did not fully comprehend or understand or had a lapse in memory during a court status conference when the same was asked.  It was not my intention to misrepresent to the Court."  (Hernandez Decl. ¶ 30, ECF No. 146.)  The Magistrate Judge's question to Mr. Hernandez was clear and direct, and Mr. Hernandez is highly educated and has shown himself to be very articulate in his command of the English language.  He cannot have it both ways—either he didn't understand *or* his memory failed him.  And if either were actually true, then he would know which one was.  To compound matters, at the evidentiary hearing, when pressed by the Court about how

New York about his case and his T-visa application, and had received his T-visa in May 2020. Thus, he clearly received some communications from USCIS before the August 2021 conference. He has not shown that the failures and disobedience were substantially justified or that other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(b)(2)(C).

he could have been surprised to learn that he could file a FOIA request after he had done so, Mr. Hernandez offered a different explanation: that he did not know if his request would be granted.  He said he was "surprised" because he had not obtained the documents yet.  Mr. Hernandez's efforts to explain away his statements to the Magistrate Judge and in his Declaration are likewise incredible and thus unavailing. And his testimony at the evidentiary hearing to have forgotten that he filed a FOIA request, seeking immigration documents he insisted he needed for this case, which had been occupying his time and emotions, is utterly unbelievable.

Mr. Hernandez has a pattern of representing that he has not received or was not aware that he had received important documents related to this case, when in fact the circumstances support the reasonable inference that he had received them and was aware of them.  This includes the immigration documents served on him by RN Staff in June 2021, the documents sent to him by USCIS pursuant to his FOIA request, and the Magistrate Judge's Order on Defendants' Motion to Compel.  The fact that RN Staff counsel resent the immigration documents to Mr. Hernandez in July 2021 in the same way they had sent them in June 2021, coupled with the fact that RN Staff filed a Notice of Compliance with the order compelling them to send the documents to him, and Mr. Hernandez's failure to challenge that Notice to say he never received the documents suggests, and the Court finds, that he did in fact timely receive them.

As for the Magistrate Judge's Order on Defendants' Motion to Compel, Mr. Hernandez expects the Court to believe that two weeks into his temporary work

assignment and without initiating any communications in months, on February 7, the very day that his compliance with the Order was due, he—unprompted—wrote to defense counsel requesting service by email, even though counsel was already serving him by email—and exclusively by email.  To top it off, Mr. Hernandez also requested that, "just in case," counsel notify him of any "urgent" communication from the Court. This is simply not believable.  Mr. Hernandez has not explained why his email states that he had checked his mail on February 5 and 6 and found nothing from the Court; at the evidentiary hearing he said he was not expecting anything.  Neither has he satisfactorily explained why he did not similarly inform or query counsel after he checked his mail while home the previous weekend.  To make matters worse, at the evidentiary hearing, Mr. Hernandez claimed that his February 7 email was prompted by an email communication from Mr. McCarney.  But the exhibits reflect that Mr. Hernandez's email was the first email in that email chain.

Mr. Hernandez also claimed that he did not see the email sent by Mr. McCarney on February 7 at 7:17 p.m. with the Magistrate Judge's Order attached because he was focused on accessing a computer to write to the Court a letter, which had to be signed in ink.  This is unbelievable for several reasons.  Mr. Hernandez wants the Court to believe that while using his email to send a letter to the Court around 11 p.m., he failed to check his email inbox for any messages.  That seems unlikely. Furthermore, the content of his February 7 letter suggests that he did see the email, if not the Order.  The letter indicates that defense counsel advised Mr. Hernandez of a "Court order *granting in part and denying in part* [RN Staff's] motion to compel,"

(ECF No. 130 (emphasis added)), tracking the language used in the attachment to the email and the Order itself; whereas, Mr. McCarney's 6:22 p.m. email had merely referred to the Order "granting, in part, RN Staff's Motion to Compel." (ECF No. 131-1 at 2.)  Moreover, the letter Mr. Hernandez filed with the Court has an electronic, typed signature.  Mr. Hernandez suggested that was not the document he filed, but he backed off that effort when presented with the email notification to Mr. McCarney, which likewise contained a letter with an electronic signature.  At that point, Mr. Hernandez offered that he was "mistaken" in thinking he had signed the document with a wet signature, and that he had never in his life used an electronic signature. That claim, too, is unworthy of belief.

Further, at the evidentiary hearing, Mr. Hernandez first denied knowing what PACER is, and then said he understood that only attorneys can access it.  Finally, he admitted he had been informed about PACER, and tried to explain away his initial denial.  That effort was not persuasive.  And if Mr. Hernandez was aware of PACER, and as he testified he had obtained a computer he said was necessary to allow him to write, print, and scan out his letter to the Court, he could have used PACER to access the Order that counsel had told him about.  The Court finds that Mr. Hernandez was making up excuses for why he allegedly did not see, let alone read, the 7:17 p.m. email to which the Order on Defendants' Motion to Compel was attached.

The Court finds that Mr. Hernandez represented, falsely, to the Court in filings and at the evidentiary hearing that before filing his February 7 letter with the Court, he had not read the Order on Defendants' Motion to Compel.  The Court further finds

that Mr. Hernandez was aware of the February 7, 2022 deadline imposed on him by the Order, willfully disobeyed that order, and tried to justify his noncompliance by claiming he was not aware of and had not yet read the Order. By making these false representations at the evidentiary hearing, Mr. Hernandez has committed a fraud on the Court, and he did so in an attempt to avoid sanctions.

Whether the sanction of dismissal is appropriate "depends on all the circumstances of the case." *McMahan v. Deutsche Bank AG*, 892 F.3d 926, 932 (7th Cir. 2018) (quotation omitted). The facts and circumstances of this case, as set forth in the Findings of Fact, along with the facts highlighted in the Conclusions of Law, demonstrate that Mr. Hernandez's conduct warrants the severest of sanctions. The Court has highlighted only some of the sanctionable conduct. But through the course of this litigation, Mr. Hernandez has concealed highly relevant and material evidence—his immigration records and T-visa related materials. He has directed repetitious discovery requests to Defendants for the same documents. And when given the chance to explain his misconduct at the evidentiary hearing—a hearing the purpose of which Mr. Hernandez knew was to determine whether he should be sanctioned up to dismissal—he offered more incredible explanations, to include contemporaneous contradictions, under oath.

The Court is certainly aware that any sanction imposed must be proportional to the circumstances and consideration should be given as to whether sanctions short of dismissal with prejudice would suffice. The first four factors courts should consider when deciding a Rule 41(b) motion clearly weigh against Mr. Hernandez, and the

other two factors do not counsel against dismissal. *See Mahan v. Deutsche Bank AG*, 892 F.3d 926, 931–32 (7th Cir. 2018).  Even the understandable desire to remedy a perceived grievance that led to his immigration status does not warrant perpetrating a fraud on the Court.  All the circumstances of this case counsel in favor of dismissal. *See id.* at 932.

The Court finds that a lesser sanction would be insufficient for several reasons. The misconduct is egregious.  Lesser sanctions would not sufficiently punish Mr. Hernandez for his false and misleading representations to the Court and counsel and may not provide sufficient deterrence to others who might consider similar conduct. Preventing Mr. Hernandez from using his immigration records at trial would not be sufficient sanction—Defendants desire to use the records at trial as well.  Striking Mr. Hernandez's pleadings referring to immigration filings or employment visa sponsorship and precluding him from supporting his claims with testimony or other evidence may be tantamount to a dismissal.  In addition, the trial is set for June 21, 2022, and Defendants have been prejudiced by Mr. Hernandez's withholding of appropriate disclosures and discovery responses.  Finally, dismissal is necessary to "maintain 'the integrity of the trial process.'" *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 832 (1994)).  Accordingly, the Court exercises its inherent authority and imposes the sanction of dismissal of this action in whole.

RN Staff Defendants' Motion to Strike Plaintiff's Letter, (ECF No. 140), is **denied**. While RN Staff Defendants are right that the letter appears to be an impermissible

and untimely reply in support of Mr. Hernandez's February 14, 2022, letter, the Court has considered it to the extent it shows Mr. Hernandez's continued refusal to comply with the Magistrate Judge's discovery order.  All other pending motions are **denied**.

### Conclusion

The Motion for Dismissal and Other Sanctions, (ECF No. 136), is **granted** and the Court concludes that the sanction of dismissal with prejudice is warranted. Accordingly, the trial setting and final pretrial conference are **vacated**.

Mr. Hernandez's Motion to Be Served by Email, (ECF No. 130), and Motion re: Court Order, (ECF No. 133), are **denied**.  RN Staff Defendants' Motion to Strike Plaintiff's Letter, (ECF No. 140), is **denied**.

The Court finds that Defendants are entitled to an award of costs and attorney's fees.  Defendants have until **June 21, 2022,** to file a Bill of Costs and Motion for Attorney's Fees incurred from preparing for and participating in the July, August, and November 2021 court conferences; preparing RN Staff's Motion to Compel, (*see* ECF No. 122, 123), as properly apportioned under Rule 37(a)(5)(C); responding to Mr. Hernandez's February 7, 2022, motion, (*see* ECF No. 130, 131), and February 14, 2022, motion, (*see* ECF No. 133, 134); and preparing the Motion for Dismissal and Other Sanctions, including the supporting Memorandum of Law.  Mr. Hernandez shall have until **July 12, 2022,** to file a response, and Defendants shall have until **July 26, 2022,** to file a reply.

The Clerk shall enter final judgment.

**SO ORDERED.**

Date: 5/26/2022

Distribution by U.S. Mail:


Czesar Hernandez

182 Battery Avenue

Brooklyn, NY 11209


Distribution by CM/ECF to all registered counsel of record